**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Appellee.**

No. 83–5008.

United States Court of Appeals, Third Circuit.

Argued Sept. 13, 1983.

Decided Dec. 29, 1983.

As Amended Jan. 20, 1984.

Rehearing and Rehearing In Banc Denied Jan. 31, 1984.

nor, Susan Elizabeth Rees (argued), E.E. O.C., Washington, D.C., for appellant.

Thomas L. Morrissey, Rosemary A. Hall (argued), Carpenter, Bennett & Morrissey, Newark, N.J., for appellee.

Before WEIS, HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Plaintiff-appellant, Equal Employment Opportunity Commission ("EEOC" or "the Commission"), appeals an order of the United States District Court for the District of New Jersey granting summary judgment to defendant-appellee, Westinghouse Electric Corporation ("Westinghouse"). Appellant brings this action on behalf of 65 employees and contends that Westinghouse violated the Age Discrimination in Employment Act ("ADEA" or "the Act"), 29 U.S.C. §§ 621–634 (1976), by denying Layoff Income and Benefits to its employees aged 55 and older whose jobs were terminated by a plant closing. Appellant argues that such denial was improperly based on the employees' entitlement to early retirement benefits.

Viewing the record in the light most favorable to the appellant, we are asked to decide three issues: First, whether this action is time-barred under ADEA; second, assuming it is timely, whether the district court held correctly that reasonable factors other than age supported the denial of Layoff Income and Benefits to employees entitled to early retirement pension benefits; and third, whether Westinghouse's actions were in observance of the terms of a bona fide employee benefit plan and therefore excluded from ADEA coverage.

We find that the district court erred in disposing of this case by granting summary judgment. Therefore, we will reverse the order granting summary judgment and we will remand this case to the district court for trial.

David L. Slate, Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, Colleen M. O'Con-

## I.

On April 14, 1977, Paul Meola, a Westinghouse employee, filed an administrative complaint with the United States Department of Labor challenging Westinghouse's denial of Layoff Income and Benefits ("LIB") under the Pension and Insurance Agreement ("Pension and Insurance Agreement"). Meola argued that his eligibility for "Special Early Retirement" under the Westinghouse Electric Corporation Pension Plan ("Pension Plan") was an improper reason for denying him LIB benefits. Before the dispute could be resolved by the Department of Labor, however, Congress transferred enforcement authority to the EEOC,[1] which initiated this action below on behalf of Paul Meola and other "similarly situated" employees on March 28, 1980. The EEOC later amended its complaint on February 28, 1981 to add the names of 64 additional employees as injured parties in this suit.

All of these employees worked at the Westinghouse plant in Belleville, New Jersey when it closed on April 1, 1977. Westinghouse provided monetary benefits under the LIB Plan to "eligible" employees who were "laid off through no fault of [their] own for lack of work occasioned by reasons associated with the business," such as a plant closing. Appendix ("App.") at 23. The LIB Plan defines an "eligible" employee as follows:

> An Eligible Employee is an employe with two (2) or more full years of such service who is not entitled to early retirement, as specified in the Westinghouse Pension Plan, and is not on disability or leave of absence, who is laid off through no fault of his own for lack of work occasioned by reasons associated with the business (such as ... [a] plant closing), and who has not been recalled to work.

(App. at 251).

The LIB Plan permits eligible employees to choose between two forms of payment—lump-sum or weekly payments. Specifically, the Plan's lump-sum option provides:

> (a) Lump Sum Payment up to Sixty (60) Days
>
> Within sixty (60) days after a layoff which in Management's opinion will exceed six (6) months in duration, an Eligible Employe *may permanently sever his relationship with the Company and may relinquish recall rights and service credits for any purpose* (except such rights as may exist under the Pension Plan) *and may thereupon receive the Total Maximum Sum available to him,* together with vacation pay and any other sums due him, in a Lump Sum Payment. If such employe has vested rights under the Westinghouse Pension Plan, he may elect not to withdraw his pension contributions, if any.

(App. at 252) (emphasis added). By electing weekly payments, on the other hand, an employee neither severs his relationship with Westinghouse nor risks his recall rights. (App. at 254). Westinghouse operated this LIB Plan under the Pension and Insurance Agreement which is part of the collective bargaining agreement. (App. at 251–254).

Under this same collective bargaining agreement, Westinghouse must also maintain a pension plan. The pension plan in effect at the time of the Belleville Plant closing was a recently amended version of the 1966 Pension Plan which delineated four categories of retirement—"normal retirement," "early retirement," "deferred retirement" and "selected retirement." (App. at 175–176). For the purposes of this appeal, we will focus on the "early retirement" and "selected retirement" provisions.

Two "early retirement" options were available. An employee with 10 or more years of service could retire on the first day of the month following his 60th birthday. An employee with 10 or more years of service who was *laid off* after reaching his 59th birthday, but before reaching his 60th

---

1. Reorg.Plan No. 1 of 1978, 3 C.F.R. 321 (1978), *reprinted in* 5 U.S.C.A.App. at 150 (West Supp. 1979), *and in* 92 Stat. 3781 (1978).

birthday, who had not returned to work, could retire on the first day of the month following his 60th birthday, provided that he had not elected to receive a lump-sum payment related to the layoff. Finally, under "selected retirement," an employee with 30 or more years of service could retire on the first day of any month after his 62nd birthday and prior to his normal retirement date. (App. at 175–78).

The early retirement and selected retirement provisions of this Pension Plan were amended on August 1, 1976 to provide that an employee with either more than 10 years of service, or more than 30 years of service who is *laid off as a result of plant closing, after reaching his 55th birthday and before attaining his 60th birthday,* could retire so long as he had not received a lump-sum payment occasioned by the lay off and had not returned to work. (App. at 260, 276–277).

Under Westinghouse's interpretation of the LIB Plan and the Pension Plan, to be "eligible" for LIB, an employee must not be "entitled" to early retirement as defined in the Pension Plan. Thus, between January 12, 1977 and March 17, 1977, Westinghouse "counseled" 65 employees who were 55 years or older that they were ineligible for LIB because they were "entitled" to early retirement. (App. at 51–53). Accordingly, when the Belleville, New Jersey Plant closed on April 1, 1977 Westinghouse summarily placed these employees on early retirement and denied them LIB benefits.

## II.

EEOC maintains that Westinghouse's policy of excluding employees 55 years or older from LIB payments violated Section 4(a) of the ADEA.[2]  29 U.S.C. § 623(a).

EEOC charges that Westinghouse "has willfully violated and is now willfully violating" the provisions of the ADEA by continuing its policy of denying LIB to employees on the basis of age. (App. at 5). EEOC seeks recovery of severance pay, liquidated damages and a permanent injunction prohibiting Westinghouse's enforcement of the eligibility provision of the LIB Plan insofar as it results in the denial of LIB to any employee because of his eligibility for retirement benefits under Sections 16(c) and 17 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(c), 217.

Throughout the employees' journey to have this case decided on the merits of their claim of illegal age discrimination, they have been confronted with numerous barriers to preclude any relief. These barriers include Westinghouse's defense that this action was time-barred under the applicable statutes of limitations in Section 4(e). 29 U.S.C. § 626(e). Westinghouse also asserts that regardless of the applicability of the statute of limitations, its conduct was sanctioned by the ADEA in that it was excused under the specific exceptions in either Section 4(f)(1) or 4(f)(2). 29 U.S.C. §§ 623(f)(1), 623(f)(2).

Section 4(f)(1) permits an employer to differentiate among employees on the basis of age if "age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where such differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). Section 4(f)(2) allows an employer "to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes" of the Act. 29 U.S.C. § 623(f)(2). On the basis of

---

2. Section 4(a) proscribes age discrimination in employment. The pertinent portion of the statute provides:

(a) It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
(3) to reduce the wage rate of any employee in order to comply with this chapter. 29 U.S.C. § 623(a).

these defenses, Westinghouse moved for summary judgment.

The district court granted Westinghouse's motion for summary judgment on several grounds. The court concluded that this action was time-barred. Alternatively, the court held that, even if timely, Westinghouse's practices regarding the denial of LIB to older workers were excused on the basis that (1) any differences in consequences were based on reasonable factors other than age and (2) that Westinghouse had acted in observance of the terms of a bona fide employee benefit plan which was not a subterfuge to evade the purposes of the Act. (App. at 65–94).

### III.

The principles governing review of the grant or denial of a motion for summary judgment are well settled. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate only where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

This court is required to ascertain the existence of any disputed issues of material fact by viewing the record in the light most favorable to the party opposing the motion. All inferences, doubts and issues of credibility are resolved against the party moving for summary judgment. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Ely v. Hall's Motor Trans. Co.,* 590 F.2d 62, 66 (3d Cir.1978). In this case, the EEOC challenges Westinghouse's summary judgment victory below; therefore, we must accept as true the EEOC's properly plead factual allegations. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Mahler v. United States,* 306 F.2d 713, 715 (3d Cir.), *cert. denied,* 371 U.S. 923, 83 S.Ct. 290, 9 L.Ed.2d 231 (1962). Moreover, we must draw all reasonable inferences against Westinghouse. *EEOC v. Home Insurance Company,* 672 F.2d 252, 257 (2d Cir.1982).

By reason of the district court's dismissal of the complaint, we must review each of the court's alternative findings and holdings. The district court's decision was no model of clarity. The court wrote three separate memorandum opinions, and in the two subsequent opinions, it repudiated the holdings made in the earliest opinion. While the court's rationale was not always clear, the result was always the same. In each instance the court concluded that these 65 employees had no viable claim. (App. at 63, 65, 96).

We will analyze first, the issues pertaining to timeliness under ADEA statute of limitations; and second, the issues of whether the district court erred in concluding that Westinghouse had valid substantive defenses under either Section 4(f)(1) or 4(f)(2).

### IV. TIMELINESS

The district court found this action to be time-barred in several respects. To determine the significance of the district court's ruling on the statute of limitations issues, there are a number of separate, but interrelated components which must be considered.

First, critical to all employees is the issue of whether the district court was correct in finding that, on this record, the ADEA's two-year statute of limitations applied rather than the three-year statute of limitations. As a result of reliance on the two-year statute of limitations, *all* 65 employees were precluded from relief. This issue involves the presence or absence of a "willful" violation.

Second, if the district court erred on its ruling as to the applicability of the two-year statute of limitations and it should have ruled that on this record a three-year statute of limitations applied, we must, nevertheless, make other subsidiary findings to determine whether these employees have a cause of action even under a three-year statute of limitations. The district court reasoned that even if the three-year statute of limitations applied, the cause of action started to accrue as to each employee on the date when he was "counseled" as to eligibility for LIB, and that the statute of limita-

tions continued to run until such time as the employee was specifically named in a complaint or amended complaint. By this rationale, 64 of the 65 employees had their claims time-barred. Paul Meola was the only employee who overcame the barrier, and the other 64 employees had their claims dismissed, *inter alia,* on statute of limitations grounds.

In order to decide whether the other 64 employees complied with the three-year statute of limitations, we must ascertain (a) when the statute of limitations started to run—at the time of the counseling between January 12, 1977 and March 16, 1977, or at the time of the plant closing on April 1, 1977, and (b) when the statute of limitations was tolled—as to (i) Paul Meola, the only employee specifically named when the original complaint was filed on March 28, 1980, and as to (ii) the other 64 employees who were not specifically named until the complaint was amended as of February 28, 1981.

We conclude that the district court erred as a matter of law on these statute of limitations issues.

### A.

*Applicable Statutes of Limitations*

The ADEA has two different statutes of limitations by incorporation of the statutes of limitations in the Portal-to-Portal Act. A three-year statute of limitations applies in cases of willful violations and all other violations are subject to a two year statute of limitations. 29 U.S.C. § 616(e) (incorporating 29 U.S.C. §§ 255, 259).

If we decided to view the evidence and the law in the light most favorable to Westinghouse, as did the district court, we would find that this complaint was not filed within two years of either the counseling dates or the plant closing. Thus, if the two-year statute applies, there is no cause of action. Moreover, the original complaint was filed

more than three years after the completion of the last employee's counseling on March 16, 1977 but less than three years after the plant closing on April 1, 1977. The amended complaint, which specifically named 64 additional employees, was filed three years and eleven months after the plant closing. Thus, if the statute of limitations was not tolled as to those 64 employees until the date of the filing of their amended complaint, those employees have no cause of action because more than three years had elapsed.

A court must find the employees' claim viable if it finds the three-year statute of limitations applicable and that that statute of limitations runs from the date of the closing of the plant to the initiation of the original complaint, and that when the initial complaint was filed all persons within the class were protected regardless of whether they were explicitly named as aggrieved employees in the complaint. If the latter rationale is accepted, all of the employees had their claims timely filed.

The district court held that the three-year statute of limitations was not applicable in this case. In its last opinion, the court concluded in the section entitled "The Statute of Limitations Revisited," that there was no willful violation, and "so the applicable statute of limitations is the two-year statute rather than the three-year statute." (App. at 92). The court held that Westinghouse did not violate ADEA because the court interpreted the LIB Plan and the Pension Plan as allowing an employee the *choice* of taking LIB payments in a lump-sum or taking early retirement benefits.[3] Because the employee had a choice, the court concluded that no unlawful employer practice occurred. Alternatively, the district court held that the employer's actions were excused under the Act. (App. at 89). Since the three-year statute of limitations was applicable only in cases involving willful violations of ADEA, and since the lower

---

**3.** Westinghouse disagrees with the court's interpretation that these Plans gave the employee the option of selecting either LIB payments or early retirement benefits. In this case, and

prior thereto, Westinghouse has always maintained that an employee has no choice and if eligible, must take the early retirement plan.

court found no willful violation was presented in this case, the court concluded that the three-year statute did not apply. (App. at 92).

▮ We must first consider whether it was error for the district court to summarily decide the willfulness issue. Willfulness is a question of fact which necessarily raises questions of the appellees' state of mind, knowledge, intent and belief regarding the propriety of their actions. *Cacchione v. Erie Technological Products, Inc.,* 526 F.Supp. 272, 275 (W.D.Pa.1981); *Allen v. Colgate-Palmolive Co.,* 539 F.Supp. 57, 66 (S.D.N.Y.1981). A summary judgment order is not defeated, however, merely because an issue of fact exists; the factual issue in dispute must be material to the resolution of the dispute. *Allen v. Colgate-Palmolive Co.,* 539 F.Supp. at 66.

The materiality or immateriality of Westinghouse's alleged willfulness in this case, is dependent upon our determination of whether Westinghouse has advanced a valid defense to an ADEA violation under either Section 4(f)(1) or 4(f)(2). We must also determine when the cause of action accrued and when it was tolled. If the date on which this cause of action accrued was more than three years from the filing of the complaint, willfulness is not relevant and summary judgment was properly granted. If, however, the complaint was filed between the second and third year that the cause of action accrued, willfulness is relevant and can be assessed in terms of whether Westinghouse has a complete defense to this charge of age discrimination. Our problem *ab initio* is to determine when the action accrued and when it was tolled.

(1) *The Accrual Problem*

The original complaint in this action was filed on March 28, 1980. Westinghouse "counseled" the 65 employees between January 12, 1977 and March 17, 1977 by advising them they were ineligible for LIB. The district court believed that the alleged discriminatory practice was the denial of LIB

and therefore, the limitations period started to run with the "counseling" on ineligibility, and that such "counseling" constituted notice of the alleged violation of the ADEA. Relying on the Supreme Court decision in *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the district court thus held that even assuming *arguendo* a willful violation and the applicability of the three-year statute, this action was nevertheless untimely because the employees[4] aged 55 and older received "counseling" as to ineligibility for LIB payments more than three years before the EEOC filed the original complaint. We must determine whether the statute of limitations began to run when the employees were "counseled" or when they were laid-off because of the plant closing.

We believe that the district court's reliance on *Ricks* is misplaced. *Ricks* stands for the proposition that a plaintiff may not rely on the continuing violation theory to advance claims about *isolated instances* of discrimination concluded in the past, even though the *effects* persist into the present.

The plaintiff in *Ricks* was formally denied tenure on March 13, 1974. Notwithstanding this denial of tenure, Ricks was offered and accepted a *terminal* one-year contract on June 26, 1974. After the expiration of the contract, suit was filed challenging the decision to deny him tenure on the basis of discrimination. Ricks argued that the limitation period commenced with the date of discharge—namely, the expiration of the terminal one-year contract. The district court determined that the 180-day statute of limitations period for filing with the EEOC started to run on June 26, 1974, the date Ricks was offered and accepted the terminal contract because that was the day Ricks was put on notice of the decision to deny him tenure. Our court ruled that the statute of limitations began to run when the contract expired since we were of the opinion that the initial decision to terminate an employee might be reversed prior to the

---

**4.** There were 3 or 4 employees who may not have been defeated by the court's interpretation of the *Ricks'* rationale, but they were found to be barred from relief on other grounds. (App. at 96–99).

specific termination date. *Ricks v. Delaware State College,* 605 F.2d 710, 713 (3d Cir.1979).

The Supreme Court upheld the district court's decision that Ricks' claim was untimely. According to the Supreme Court, Ricks challenged only the decision to deny him tenure, but by asserting the date of discharge as the point at which the statute of limitations began to run, the Court determined that "[i]n effect, he is claiming a 'continuing violation'." *Delaware State College v. Ricks,* 449 U.S. at 257, 101 S.Ct. at 503. The allegations in the complaint, however, spoke only of the tenure decision as the discriminatory event and Ricks did not allege any facts suggesting discrimination in his actual discharge. Indeed, it was simply an inevitable *effect* of the decision to deny him tenure. *See also Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (per curiam); *United Airlines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Bronze Shields, Inc. v. New Jersey Department of Civil Service,* 667 F.2d 1074, 1083 (3d Cir.1981), *cert. denied,* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982).

In the case at bar, EEOC has alleged a *continuing* discriminatory policy and specific acts of discrimination that occurred after the development of this policy. Each denial of LIB to each of the 65 employees constituted a specific act which was part of Westinghouse's alleged continuing policy of discrimination on the basis of age. Thus, this case does not involve a discrete, isolated act such as the denial of tenure to one professor. Moreover, the instant case is distinguishable from *Bronze Shields, supra,* and *Hood v. New Jersey Department of Civil Service,* 680 F.2d 955 (3d Cir.1982). In these cases, we declined to apply the continuing violation theory to the promulgation of discriminatory eligibility lists used in the hiring and promotion of police officers and fire fighters. We found it insufficient to base a finding of continuing violation merely on an allegation that the lists were in continued *use.* We concluded that plaintiffs must also allege specific instances of discrimination occurring because of the lists' continued use. *Id.*

In the present action, the continuing violation is not premised *only* on the continued use or maintenance of the policy at issue here. After the formal promulgation of this policy, the specific instances of discrimination alleged are the application of this policy of denying LIB to each of these individual employees at the time of the plant closing. These specific instances occurred when the Belleville plant closed and each of the 65 employees was denied benefits.

A denial of LIB benefits could not occur until an employee was eligible to apply for LIB and until the claim was denied due to eligibility for early retirement. An employee did not have an enforceable demand until the claim was denied. *See Paris v. Profit Sharing Plan,* 637 F.2d 357, 361 (5th Cir.1981), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Reiherzer v. Shannon,* 581 F.2d 1266, 1272 (7th Cir. 1978). As stated earlier, to be *eligible* for LIB, an employee had to have been laid off as a result of plant closing. Thus, this case is in a different factual setting than *Ricks.* Although the alleged unlawful practice was the adoption and implementation of the policy, a cause of action could not accrue until the discrimination manifested itself by virtue of the policy actually being applied to individual employees at the time of the plant closing through individual LIB claim rejections. *See Bethel v. Jendoco Constr. Corp.,* 570 F.2d 1168 (3d Cir.1978); *Crosland v. Charlotte Eye, Ear and Throat Hospital,* 686 F.2d 208 (4th Cir.1982). In this case, the plant closed on April 1, 1977. Thus, at the earliest, the statute begins to run as of that date. An April 1, 1977 starting date makes this action timely if a three-year statute applies.

*Ricks* is also distinguishable because the professor received unequivocal notice that his tenure was denied. Thus again, we must note the significantly different factual settings of the *Ricks* case and the instant matter. In *Ricks,* the professor was eligible for tenure at the time he received notice of

its denial. In this case, Westinghouse argues that the "counseling" on the effects of its eligibility policy constituted notice. This fact is disputed.

In *Ricks,* the plaintiff received a written notice on June 26, 1974 that he would be offered a one-year terminal contract that would expire on June 30, 1975. In the view of the Supreme Court, with such a notice, there was nothing else he had to do to ascertain the college's intentions as to his actual termination date. Thus, in *Ricks,* there was precise specificity as to the date of termination unlike the instant matter which is intertwined with uncertainty as to whether the employees were even informed as to when the layoff would actually take place. In contrast to *Ricks,* there is no evidence, before this court, indicating that the Westinghouse employees received any notice—oral or written—of the actual date when the Belleville, N.J. plant would be closed. Nor can we expect these employees to have had some mystical powers of omniscience whereby they knew the precise date management was to close the plant. It is conceivable that in February 1977, those employees who were not privy to management's secrets might have been under the impression that the Belleville, N.J. plant would not be closed for months or even years. Furthermore, the mere adoption of this controversial policy in and of itself cannot be considered to constitute notice of the alleged discrimination because there is an issue as to whether Westinghouse's policy as applied actually coincided with the terms of the LIB and Pension Plans in effect at that time.[5]

Finally, even assuming an employee did receive notice that even were he otherwise eligible for LIB, his eligibility for early retirement made him ineligible for such benefits, an employee would still not have standing to bring an action until he at least was eligible to apply for LIB at the time of the plant closing. The record does not reveal any mechanism for the employees here to have filed for LIB benefits prior to actual plant closing. Thus, unlike *Ricks,* where the plaintiff could have maintained an action as of the date he was notified of the denial of tenure, in this case, the employees could not have maintained an action until denied LIB.

### (2) *Tolling of the Statute*

■ The district court held that even assuming the application of the three-year statute, the only claim tolled in this action was that of Paul Meola because at the time the original complaint was filed, Paul Meola was the only employee specifically named as required under Section 16(c) of the FLSA. 29 U.S.C. § 216(c). The names of the employees were not listed in the caption of the original complaint; the only named plaintiff in the caption was EEOC. In the pleadings, the EEOC listed only one employee by name specifically—Paul Meola— but in the EEOC's effort to protect the class, they alleged that the suit was filed on behalf of

> Paul Meola, *Jane Doe, Richard Roe, and other similarly situated employees* who were eligible for retirement, [who] were unlawfully denied severance pay when terminated due to the closing of defendants Belleville, New Jersey facilities on or about April 1, 1977.

(App. at 5) (emphasis added).

In the view of the district court, the EEOC's references to "Jane Doe, Richard Roe and other similarly situated employees" were insufficient to toll application of the statute of limitations as to those unnamed employees who constituted the class of "similarly situated employees."

---

5. The policy was orally communicated and in that regard, vague in its particulars. Moreover, it was contingent upon certain events, such as the closing of a plant. The record before this court consists only of a list naming the employees "counseled." (App. at 51). At oral argument, Westinghouse conceded that there is no information as to what these individuals were told concerning the plant closing, whether they were told that they had a choice with regard to LIB and early retirement or whether they were informed that early retirement was mandatory. Therefore, even if the *continuing violation* theory were not applied, there is a genuine issue of material fact as to whether the 65 employees in fact received adequate and unequivocal notice.

Despite the fact that paragraph eight of the original complaint had been amended on February 28, 1981 to note with specificity the names of these other similarly situated employees,[6] the district court held that the statute of limitations was not tolled as to any employee other than Paul Meola. The court reasoned that more than three years had elapsed from the time the other employees were "counseled" about their rights and the subsequent specific naming of these employees in the amended complaint.

By their complaint, EEOC alleged that this action was commenced under *both* Sections 16(c) and 17 of FLSA, 29 U.S.C. §§ 216(c) and 217, which provide different remedies. (App. at 4). Section 16(c) provides for unpaid wages and liquidated damages when the violation is willful. On the other hand, Section 17 authorizes injunctive relief against withholding or denying LIB benefits. Only Section 16(c) requires the identification of an individual claimant in the complaint to stop the running of the statute of limitations period.

An action commenced under Section 17 is commenced for all purposes when the complaint is filed and the individual employees for whom relief is sought need not be named in the complaint. *EEOC v. Gilbarco Inc.,* 615 F.2d 985, 990 (4th Cir.1980); *Hodgson v. Brookhaven General Hospital,* 436 F.2d 719, 722 (5th Cir.1970). The employees *not* specifically named in the original complaint in this case could conceivably be barred from relief under Section 16(c) but are not barred from relief under Section 17.

Therefore, regarding relief under Section 17, the action was commenced and the statute tolled when the original complaint was filed.

Consequently, we believe the district court erred in finding on a summary judgment motion that the present action was time-barred. Westinghouse has failed to establish that there are no genuine issues of material facts in dispute. Certainly, the issue of willfulness is a factual question of critical importance to deciding the statute of limitations. Additionally, one of those factual issues is whether adequate notice was given to the employees at the counseling sessions. Thus, this case should not have been disposed of by summary judgment unless Westinghouse's other defenses are sanctioned by the ADEA.

## IV. STATUTORY DEFENSES

We will now consider whether Westinghouse's actions are sanctioned under the provisions of the ADEA, even assuming, as the district court did, that the EEOC is able to make a *prima facie* case of age discrimination. As we indicated earlier, if Westinghouse has a complete defense to the EEOC's charge of age discrimination, then *a fortiori* the issues of timeliness and willfulness are irrelevant.

The EEOC claims that Westinghouse's policy on its face violates Section 4(a) of the ADEA because it subjects older employees —55 years of age and above—to treatment different than that afforded younger em-

---

**6.** The docket entries note that the amended complaint was filed on March 3, 1981. (App. at 2). The district court in its memorandum opinion states that the amended complaint was filed on February 28, 1981 (App. at 98). Paragraph eight of the original complaint was amended to allege as follows:

8. As a result of the disciplinary practices alleged above, E. Adams, G. Badan, L.F. Belinc, J.W. Bremmer, A.W. Cafone, A. Caruso, P. Cosimano, B.J. Decker, J.R. Del Russo, L. Duda, J. Evanocho, R.L. Ferguson, M.J. Germek, G. Giangeruso, J. Gil, P.J. Haddick, I. Jenkins, M.E. Klien, S.W. Konkol, V. Korzystko, G. Koski, J.F. Kozub, P.J. Lyons, J.J. Marx, P. Meola, C. Millard, E. Miller, W.A. Moskal, C.J. Obruzut, J. Pandolfi, M.M. Pas-

tore, R. Perrone, A. Pickman, A.F. Pirog, S. Podorski, F.V. Renn, L. Reque, I.T. Reidmiller, G. Sabol, L. Schroeder, J. Smythe, R.O. Sorel, H.R. Stanley, M. Stecher, F. Stecher, L.M. Stevenson, H. Szorstowski, D. Tyson, E. VanDuyne, A. VanDuyne, W. Vanderhee, L.M. Vitale, S.F. Vitolo, J.S. Williams, W. Soloszczak, J. Yuhasz, J. Yurkovich, B. Zietkiewicz, A. Zigarelli, K. McGinnes, S. Schlatter, E. Smole, L. Schilling, L. Cook, M. Leeming and other similarly situated employees, who were eligible for retirement, were unlawfully denied severance pay when terminated due to the closing of Defendant's Belleville, New Jersey facilities on or about April 1, 1977.

(App. at 5).

ployees by depriving older employees of LIB on the basis of age.

■ Once a plaintiff in this type of suit has put forth a *prima facie* case of age discrimination, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the challenged action. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Smithers v. Bailar,* 629 F.2d 892, 895 (3d Cir.1980); *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 81 (2d Cir.1983); *EEOC v. Baltimore and Ohio Railroad Co.,* 632 F.2d 1107, 1110 (4th Cir. 1980), *cert. denied,* 454 U.S. 825, 102 S.Ct. 113, 70 L.Ed.2d 98 (1981). Westinghouse claims that its actions are excused under Section 4(f)(1) as based on reasonable factors other than age. 29 U.S.C. § 623(f)(1). Furthermore, Westinghouse defends the denial of LIB to those individuals entitled to early retirement on the grounds that these actions were taken in observance of the terms of a bona fide employee benefit plan, not a subterfuge intended to evade the purposes of ADEA. Thus, Westinghouse argues that its action is excused under Section 4(f)(2). 29 U.S.C. § 623(f)(2).

We must determine whether, viewing the record in the light most favorable to EEOC, Westinghouse has provided a complete defense to the charge of age discrimination and is, therefore, entitled to summary judgment as a matter of law.

### A.

*Section 4(f)(1) Defense*

Section 4(f)(1) of the Act provides that it is not unlawful for an employer to take any action otherwise prohibited under ADEA where the differentiation is based on reasonable factors other than age. The district court reasoned that in this case there is no ADEA violation because the layoff was the result of a plant closing:

> That event laid off employees of a wide variety of ages, and with different consequences for employees of the same age. The differences in consequences are due not to age but to *other factors* in the LIB and Pension Plans.

(App. at 87) (emphasis added). These "other factors", in the court's opinion, included the level of employees' earnings and years of service with the employer. The court went on to say, however, that "[a]ge is inevitably involved and cannot be excluded as a factor in making the arrangements." (App. at 93).

■ Westinghouse bears the burden of going forward with evidence to demonstrate reasonable factors, other than age, justifying its action. *Marshall v. Westinghouse Electric Corp.,* 576 F.2d 588, 592 (5th Cir.1978). Westinghouse asserts that the employees involved here were denied LIB benefits because of their eligibility for early retirement. However, even if this contention is supported by sufficient proof, there is authority for our finding that eligibility for early retirement is too closely related to age to be given credence as a valid justification.[7]

Because of the close relationship between eligibility for early retirement and age, the obvious effect of Westinghouse's practice was to deny LIB to older workers who had accumulated through years of service more credit years than their younger counterparts. *Leftwich v. Harris-Stowe State College,* 702 F.2d 686, 691 (8th Cir.1983). If eligibility for early retirement can be used to justify the denial of LIB to older employees, the purpose of the ADEA will be de-

---

**7.** Examples of the types of justifications deemed excusable under Section 4(f)(1) include those in the cases of *de Loraine v. MEBA Pension Trust,* 499 F.2d 49 (2d Cir.1974), *cert. denied,* 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974), and *Bittar v. Air Canada,* 512 F.2d 582 (5th Cir.1975). In *Bittar,* which exemplifies the types of justifications voiced in wrongful discharge cases, the defendant-employer produced evidence of numerous instances of unsatisfactory job performance. In *de Loraine,* the withdrawal of permission for retired engineers to return to work to satisfy an increased demand for engineers was justified or excused on the basis of a cessation of such demand. We conclude that "eligibility for early retirement" is not as analytically separable from age as are the factors advanced in the above cases. The nexus to age is simply too strong to allow it as a justification.

feated. Congress enacted this statute "to promote employment of older persons based on their ability rather than age" and "to prohibit arbitrary age discrimination in employment." 29 U.S.C. § 621.

In a case not too dissimilar to the case at bar, the city of Altoona required the termination of its most senior firemen who were eligible for pension. Our court, speaking through Judge Gibbons, said: "The City attempts to justify the instant involuntary retirements, which plainly are on the basis of age, because of pension eligibility. It is well settled, however, that mere eligibility for a pension is not a defense to a *prima facie* case of age discrimination ... The city's contention that the retirements were based on economic considerations is equally meritless, for such considerations cannot be used to justify age discrimination." *EEOC v. City of Altoona,* 723 F.2d 4 at 7 (1983). In the *City of Altoona, supra,* the fire department reduced its staff, while here Westinghouse closed its plant; each employer acted because of economic considerations, and here, just as in *City of Altoona,* such economic "considerations cannot be used to justify age discrimination." *Id.*

In view of the fact that Westinghouse has articulated no other factor or justification to serve as a legitimate non-discriminatory reason for the denial of LIB payments under the circumstances of this case, we conclude that Westinghouse has failed to establish a Section 4(f)(1) defense.

## B.

*Section 4(f)(2) Defense*

Finally, we will consider whether Westinghouse has established a defense under Section 4(f)(2). Section 4(f)(2) provides that it shall not be unlawful for an employer to observe the terms of a bona fide employee benefit plan, such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of the ADEA. 29 U.S.C. § 623(f)(2).[8] In establishing a Section 4(f)(2) defense, the burden is on Westinghouse to demonstrate the existence of three elements: (1) Westinghouse must have been acting in observance of the terms of (2) a bona fide employee benefit plan (3) which is not a subterfuge to evade the purposes of the ADEA. *Smart v. Porter Paint Co.,* 630 F.2d 490, 493 (7th Cir. 1980); *See United Airlines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977); *Zinger v. Blanchette,* 549 F.2d 901 (3d Cir.1977), *cert. denied,* 434 U.S. 1008, 98 S.Ct. 717, 54 L.Ed.2d 750 (1978); *Brennan v. Taft Broadcasting,* 500 F.2d 212 (5th Cir. 1974). Because we conclude, *infra,* that the LIB Plan was not a bona fide employee benefit plan, we do not reach the other two components of the defense.[9]

---

**8.** This court notes that Section 4(f)(2) was amended in 1978 to expressly prohibit involuntary early retirement premised on age. 29 U.S.C. § 623(f)(2), as amended, Pub.L. 95–256, § 2(a), Apr. 6, 1978, 92 Stat. 189. Though it is arguable that the prohibition in the 1978 statute would be violated by enforcement of Westinghouse's policy of denying LIB to employees over age 55 (with 10 or more years of service and eligible for early retirement) and it might constitute involuntary early retirement by not according the employees an option as to form of benefits, we nevertheless decline to give retroactive effect to the 1978 Amendments in this case.

This court and other courts of appeals have held that these 1978 Amendments should be given prospective application only and should not apply retroactively to involuntary retirements occurring before enactment on April 6, 1978. *Sikora v. American Can Co.,* 622 F.2d 1116, 1121 (3d Cir.1980); *Jensen v. Gulf Oil*

*Refining and Marketing Co.,* 623 F.2d 406, 409 (5th Cir.1980); *Smart v. Porter Paint Co.,* 630 F.2d 490, 497 (7th Cir.1980). We will do likewise in this instance.

**9.** Whether or not Westinghouse acted in observance of the terms of the plans at issue here is dependent upon the proper construction of the terms and interrelationship of the LIB Plan and the Pension Plan. The phrase "to observe the terms of" has been interpreted to mean that the terms of the plan must *expressly* sanction the practice or expressly give the employer the *option* of engaging in the activity. *See Smart v. Porter Paint Co.,* 630 F.2d 490 (7th Cir.1980); *Zinger v. Blanchette,* 549 F.2d 901 (3d Cir. 1977), *cert. denied,* 434 U.S. 1008, 98 S.Ct. 717, 54 L.Ed.2d 750 (1978); *Sexton v. Beatrice Foods Co.,* 630 F.2d 478 (7th Cir.1980); *EEOC v. Baltimore and Ohio R. Co.,* 632 F.2d 1107 (4th Cir.1980); *Marshall v. Hawaiian Telephone Co.,* 575 F.2d 763 (9th Cir.1978); *Cheng v. GAF Corp.,* 566 F.Supp. 350 (S.D.N.Y.1982).

(1) *Bona Fide Employee Benefit Plan*

Westinghouse argues, and the district court agrees, that Westinghouse's LIB Plan qualifies as a bona fide employee benefit plan under Section 4(f)(2) of the ADEA. Section 4(f)(2) states in pertinent part:

It shall not be unlawful for an employer ... to observe the terms of ... *any bona fide employee benefit plan such as a retirement, pension, or insurance plan,* which is not a subterfuge to evade the purposes of this Chapter.

29 U.S.C. § 623(f)(2) (emphasis added).

The district court concluded that the LIB Plan is "a welfare benefit plan since it provides insurance for unemployment." (App. at 77). Apparently, the underlying assumption is that the LIB Plan qualifies under 4(f)(2) merely because it provides employees with "insurance" against unemployment.

The prerequisites to qualifying under 4(f)(2), however, are much more stringent. By the express language of 4(f)(2), a plan qualifies if it is a retirement, insurance or pension plan. We are aware that the words "such as retirement, pension or insurance" were added in a descriptive sense, not excluding other kinds of employment benefit plans. *Brennan v. Taft Broadcasting Co.,* 500 F.2d at 215. Even though these words are descriptive, their description contains substance. These words are to be interpreted as indicative of the *types* of plans in which Congress intended to allow age distinctions; they are of the type whereby the cost of benefits increases with age.

The thread common to retirement, insurance and pension plans, but not found in the LIB Plan, is the age-related cost factor. The district court pointed out quite properly that:

The typical retirement and pension plan inevitably takes account of age. This was one of the points of Justice White's concurring opinion in *United Air Lines* [*v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977),*] when he observed that all retirement plans necessarily make distinctions based on age. *The desirable goals of actuarial soundness and full funding, to help achieve which ERISA was enacted, cannot be achieved without differences that take account of age.* It was in recognition of that basic fact of life and death that § 623(f)(2) was included in the Act.

(App. at 87) (emphasis added).

In this case, the LIB Plan does not reflect age-related cost factors. Instead, the LIB Plan simply states that an employee is eligible for LIB if he has at least two years of service, has been laid off for a lack of work, and is not entitled to early retirement benefits under the Pension Plan. (App. at 251). In order to be eligible for *early* retirement, an employee must be at least 55 years of age. Westinghouse thus denied LIB to 65 employees, otherwise eligible for it, because it considered them entitled to early retirement. Unlike retirement, pension and insurance benefits which are based upon age-related cost factors, the benefits derived from this Plan are based solely on an employee's length of service—at least two years—and the occurrence of a layoff.

We simply can glean no age-related cost factor on the face of the LIB Plan which

---

The district court, Westinghouse and the EEOC disagree as to the proper interpretation of these Plans insofar as the Plans give the eligible employee the option of rejecting early retirement on a plant closing.

We believe that the proper interpretation of these plans is a question to be best resolved by the company and the union by way of the arbitration process, therefore, we will not address this element of the 4(f)(2) defense.

Moreover, whether or not Westinghouse's 1976 amendment to the Pension Plan which lowered the age for early retirement for those employees laid off as a result of plant closing constituted "a subterfuge" to evade the purposes of the ADEA as alleged by the EEOC is a disputed issue of material fact. The record is silent as to Westinghouse's purpose or motive. *See United Airlines v. McMann,* 434 U.S. at 203, 98 S.Ct. at 450; *Smart v. Porter Paint Co.,* 630 F.2d at 495; *Crosland v. Charlotte Eye, Ear and Throat Hosp.,* 686 F.2d at 215–16; *EEOC v. Home Ins. Co.,* 672 F.2d 252, 263 (2d Cir.1982).

justifies Westinghouse's actions. The "desirable goals of actuarial soundness and full funding" are not necessarily advanced by the exclusion of LIB to individuals qualified for early retirement.

Furthermore, the fact that the LIB Plan is tied to Westinghouse's Pension Plan does not negate the fact that it is more analogous to a "fringe benefit" than to the types of employee benefit plans covered under 4(f)(2). Fringe benefit plans unrelated to the age cost factor are not included in the 4(f)(2) exception.

The LIB Plan in this case is similar to the city's sick leave plan in *Alford v. City of Lubbock*, 664 F.2d 1263 (5th Cir.1982), *cert. denied*, 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982). The Fifth Circuit held that the state's retirement plan was "bona fide" but that the city's policy of denying accrued sick leave pay to city employees whose retirement was not covered by the state retirement plan, was not part of a bona fide employee benefit plan. The court stressed the independence of the sick pay policy from the state retirement pension, or insurance plan. 664 F.2d at 1272. The *Alford* court also addressed the city's argument that the sick leave payment policy was tied to length of service and held that the city

> may not deny an entire class of older employees—those hired after age fifty— *any* participation in a *fringe benefit* unrelated to a bona fide "retirement, pension, or insurance" plan simply by artificially trying to tie the benefit to such a plan.

664 F.2d at 1272 n. 12 (emphasis added).

In the case at bar, Westinghouse's Pension Plan is "bona fide" to the extent that, viewing it alone, it is genuine and actually pays benefits. *United Airlines v. McMann*, 434 U.S. at 195, 98 S.Ct. at 446; *Crosland v. Charlotte Eye, Ear and Throat Hospital*, 686 F.2d 208, 212, n. 3 (4th Cir.1982); *Marshall v. Hawaiian Telephone Co.*, 575 F.2d at 766. The LIB Plan, however, is functionally independent of the Pension Plan although interrelated in one respect—ineligi-

bility for LIB is dependent upon eligibility for early retirement. The mere fact that the benefits available to employees under the Pension Plan were to be considered when determining eligibility for LIB, however, does not merge the two plans into a single "coordinated benefit plan." *EEOC v. Borden's Inc.*, 551 F.Supp. 1095, 1099 (D.Ariz.), *appeal docketed*, No. 83-1701 (9th Cir. Feb. 17, 1983). On the contrary, this interaction shows that the LIB Plan is not an integral part of the Pension Plan.

Consequently, this court concludes that the record does not support the application of the Section 4(f)(2) exception as regards to this element.

## V.

In short, we conclude that genuine issues of *material* fact remain as to whether Westinghouse's policy of denying LIB to older workers was a *willful* violation of ADEA, calling into play the three-year statute of limitations and whether the employees were notified of the plant closing. Additionally, Westinghouse simply has not established a complete defense under either Section 4(f)(1) or 4(f)(2) on the record before this court. Thus, this case will be remanded to the district court on the issues of willfulness, notice and the applicable statute of limitations.

For the foregoing reasons, we will reverse the judgment below and we will remand the case for further proceedings consistent with this opinion.