EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

WESTINGHOUSE ELECTRIC
CORP., Defendant.

Civ. A. No. 80–853 (AJL).

United States District Court,
D. New Jersey.

Jan. 13, 1987.

Lanier E. Williams, E.E.O.C., Philadelphia, Pa., for plaintiff.

Thomas L. Morrissey, Carpenter, Bennett & Morrissey, Newark, N.J., for defendant.

LECHNER, District Judge.

This age discrimination action stems from the closing of a Westinghouse Electric Corporation ("Westinghouse") facility located in Belleville, New Jersey on April 1, 1977. Those employees at the facility who were laid off and not relocated to other Westinghouse facilities were provided with one form of post-employment benefits. Employees with sufficient seniority at Westinghouse were entitled to receive early retirement benefits; others were provided with less valuable "layoff income and benefits" ("LIB"). In this action, the sixty-five former Westinghouse employees who were eligible for, and received, early retirement benefits claim that they should have received both early retirement benefits and LIB. They assert that Westinghouse's policy of providing them with only early retirement benefits constitutes age-based discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq. (the "ADEA").

In an opinion filed on October 29, 1986, I ruled that a two year statute of limitations was applicable to this action. In that opinion, I invited further submissions from the parties to establish the date the cause of action accrued in this case. In response to that invitation, the parties have submitted

additional briefs, affidavits, excerpts from depositions and documentary evidence to pinpoint the accrual date. Having considered the parties' submissions and arguments, I conclude the cause of action in this case accrued more than two years before the complaint was filed. Accordingly, the case must be dismissed as untimely.

## I.  *Facts* [1]

Since at least 1960, Westinghouse has negotiated with representatives of its employees a variety of agreements providing certain benefits to its employees. Since 1960, Westinghouse has provided retirement benefits to eligible employees, and LIB benefits to employees involuntarily terminated by Westinghouse who are not otherwise eligible for early retirement. (Weaver Aff., 7/9/86, ¶¶ 2, 3.) Since 1973, Westinghouse has provided enhanced LIB or early retirement benefits to its employees terminated as a result of a plant closing. (*Id.*, ¶ 9.)

It appears fifty-nine of the sixty-five plaintiffs in this action were members of the union which negotiated these benefits agreements. (Westinghouse Brief, 11/21/86 at 2.) According to the Westinghouse employee who supervised its benefit plans, Rodrigues,[2] in 1976 all employees at the Belleville plant were provided with booklets summarizing the benefit plans. (Simone Aff., 11/21/86, ¶ 2.) It appears that the booklets that were distributed indicated that employees eligible for early retirement benefits would not be eligible for LIB. (Weaver Aff., 6/9/86, Ex. D at 2.)

Early in 1977, Westinghouse determined that the Belleville plant would be closed. Between January and March, 1977, employees were informed of the plant closing at plant-wide meetings and in written notices sent to the employees and posted on bulletin boards at the plant. (Duffy Aff., 7/9/86, Ex. A, B; Dep. Testimony cited to in Westinghouse Brief, 7/9/86, at pp. 19–21, nn. 46–52.) Beginning in January, 1977, Rodrigues began conducting counselling sessions to advise employees about the benefits they would be entitled to receive after the plant closing. Employees who did not have the benefit plan booklets which had been distributed in 1976 were given replacement copies. (Simone Aff., 11/21/86, ¶ 5.) The last of these plaintiffs were counselled on March 16, 1977.[3] Westinghouse claims that by March 16, 1977, at the latest, all of these plaintiffs knew they would be entitled only to early retirement benefits and not LIB benefits.

The Belleville plant closed as scheduled on April 1, 1977. All but six of the plaintiffs in this action had actually ceased working at the plant by that date. The last plaintiff-employee to actually work at the plant ceased working on June 16, 1977. Most of the plaintiffs were deemed to have retired on May 1, 1977 and they began receiving their post-employment benefits on that date. The last plaintiff was deemed to have retired on August 1, 1977, at which time he began to receive his benefits. (Westinghouse Appendix, 11/21/86, pp. 1–3.) The post-employment benefit checks plaintiffs received included amounts only for early retirement.

On March 28, 1980, the Equal Employment Opportunity Commission ("EEOC") filed its complaint in this action on behalf of those Westinghouse employees who were laid off at the Belleville plant and received retirement benefits but not LIB.

---

**1.** The facts giving rise to this action are more fully set forth in my October 29, 1986 opinion, *Equal Employment Opportunity Comm'n v. Westinghouse Electric Corp.*, 646 F.Supp. 555, 557–60 (D.N.J.1986). The facts set forth herein are relevant specifically to the issue of the accrual date for the cause of action.

**2.** It appears Ms. Rodrigues' name has changed to Simone. Because the parties do so, I shall continue to refer to her as Rodrigues. Citations to her affidavit, filed November 21, 1986, will be to the Simone affidavit.

**3.** Rodrigues personally counselled sixty-four of the sixty-five plaintiffs; it appears one of the named plaintiffs, Rose L. Ferguson, had accumulated an insufficient number of years of service with Westinghouse to be eligible for either early retirement or LIB benefits. (Westinghouse Appendix, 11/21/86, at 27.) Ferguson is not properly named as a plaintiff.

The complaint challenges Westinghouse's policy of not providing LIB to employees eligible for early retirement as violative of the ADEA. The plaintiffs seek damages and other forms of relief.

## II. *Discussion*

Determining the accrual date of a discrimination cause of action is not necessarily a simple task. In *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980), the Supreme Court held that a discrimination cause of action accrues on the date the allegedly discriminatory action is taken and made known to the alleged victim: "In sum, the only alleged discrimination occurred—and the filing limitations period therefore commenced—at the time the [allegedly discriminatory] tenure decision was made and communicated to [the victim]." The issue may be somewhat more complicated in actions such as the one at bar, where there are numerous victims of an allegedly discriminatory policy; there may be some uncertainty as to when or whether the victims became aware of the policy.

The Court of Appeals for the Third Circuit has already had an opportunity to comment on the "accrual problem" in this case. *Equal Employment Opportunity Comm'n v. Westinghouse Electric Corp.,* 725 F.2d 211, 218–20 (3d Cir.1983), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). Having analyzed the *Ricks* decision, the Third Circuit approached the accrual problem in this action from the standpoint of determining whether all of the plaintiffs were made aware of the allegedly discriminatory policy during their individualized counselling sessions: "We must determine whether the statute of limitations began to run when the employees were 'counselled' or when they were laid-off because of the plant closing." *Id.* at 218. And even if the employees were so informed, the Third Circuit suggested that their collective cause of action could not have accrued until the plant closing date:

After the formal promulgation of the policy, the specific instances of discrimination alleged are the application of this policy of denying LIB to each of these individual employees at the time of the plant closing. These specific instances occurred when the Belleville plant closed and each of the 65 employees was denied benefits.

\* \* \* \* \* \*

Although the alleged unlawful practice was the adoption and implementation of the policy, a cause of action could not accrue until the discrimination manifested itself by virtue of the policy actually being applied to individual employees at the time of the plant closing through individual LIB claim rejections.

*Id.* at 219.

The Supreme Court and the Third Circuit have thus indicated three requirements for the accrual of a discrimination cause of action in situations such as exist in the case at bar. First, there must be an allegedly discriminatory policy or decision. Second, the allegedly discriminatory policy or decision must be communicated to the alleged victims of the policy. Finally, the policy or decision must be applied to the alleged victims.

The parties cannot dispute that the allegedly discriminatory policy existed more than two years before the filing of this action. And the Third Circuit has indicated the policy was applied to the alleged victims at the time of the plant closing. In the motion now before the court, therefore, only the second element—knowledge of the policy on the part of its alleged victims—is at issue. Because the record establishes there is no reasonable question of material fact that the plaintiffs in this action knew of the allegedly discriminatory Westinghouse policy more than two years before the filing of this action, the action is barred by the applicable statute of limitations.

### 1. *Actual Knowledge*

Westinghouse has submitted an affidavit of Rodrigues, excerpts from deposition tes-

timony of most of the plaintiffs and a plaintiff-by-plaintiff analysis establishing when each plaintiff was counselled, when he or she stopped working and when he or she began receiving his or her benefits, as well as other pertinent information, to show each of the plaintiffs knew by the time of the plant closing he or she would be entitled to receive only early retirement benefits. These submissions indicate every plaintiff knew or should have known, either from receiving a copy of the Westinghouse pension booklet, from the individualized counselling sessions with Rodrigues or from other sources, that employees laid-off at the plant closing who were eligible for early retirement benefits would not be eligible for LIB.

In opposition to Westinghouse's claim that the employees knew early retirement beneficiaries would not be entitled to LIB, the EEOC has submitted the deposition testimony of five employees indicating they were not counselled they would be ineligible for LIB. However, the very same deposition testimony the EEOC has submitted for four of these employees, indicates the employees generally were aware that company policy would entitle them to receive only early retirement benefits.

One of the employees testified: "[W]e should have gotten a severance pay after all those years. ... The whole group of us wondered why we should [sic] have got it. ... [W]e said we should have got our severance pay, too." (Beline Dep. at 21.) Another employee testified, when asked whether he had ever discussed the issue of receiving or not receiving severance pay: "We all did. We were all very hopeful of it." (Brenner Dep. at 32.) A third employee indicated Westinghouse's "one benefit" policy was clearly known: "[A]nother thing that they stressed was this, you can only collect one. You can't collect two. In other words, if you're getting a pension, that's all you're getting. You're not getting no

... severance pay, and I know quite a few of them that were questioning them...." (Decker Dep. at 17–18.) Another employee's response to a question whether he received severance pay indicates he understood the "one benefit" policy: "No, I didn't [receive severance pay]. No. I was 55, so, I was eligible to get a pension." (Yurkovich Dep. at 30.) [4]

In opposition to Westinghouse's motion for summary judgment, the EEOC asserts there is an issue of fact whether the employees were aware they would receive only one form of post-employment benefit. Yet the very deposition testimony upon which the EEOC relies to demonstrate the question, indicates that whether or not they were specifically told they would not receive LIB during the individualized counselling sessions, the employees generally knew of the policy.

To prevail on a motion for summary judgment, a movant must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). As the Supreme Court has stated, once the party seeking summary judgment has pointed out to the court the absence of a fact issue,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. ... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

*Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* — U.S. —, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original, citations and footnotes omitted).

---

**4.** The deposition testimony excerpts of the fifth employee, a union member, indicate she was confused about whether she was entitled to any benefits at the time the plant closed, and was surprised when the first check from Westinghouse arrived. (Pickman Dep. at 19.) Although there might be a contention as to whether this employee knew of the "one benefit" policy, such a position is not reasonable. See discussion, *infra.*

As the Court stated in *Anderson v. Liberty Lobby, Inc.,* — U.S. —, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted): "If the evidence [submitted by a party opposing summary judgment] is merely colorable ... or is not significantly probative ... summary judgment may be granted." The Supreme Court went on to note in *Celotex Corp. v. Catrett,* — U.S. —, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (footnote omitted): "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."

The Federal Rule cited to by the Supreme Court in *Matsushita* provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e). Thus, a party opposing summary judgment has the affirmative burden of coming forward with *specific* facts evidencing a need for trial.

Westinghouse has submitted substantial evidence to indicate these plaintiffs actually knew by the time they were counselled by Rodrigues that they would be entitled only to early retirement benefits and not LIB. The EEOC has submitted nothing of substance to demonstrate the existence of a factual question on this issue. In light of the summary judgment pronouncements of the Supreme Court in *Matsushita, Liberty Lobby* and *Celotex,* the EEOC has not carried its burden to defeat the motion. Accordingly, the plaintiffs knew of the allegedly discriminatory policy by March 16, 1977, the date the last members of the collective group of plaintiffs were counselled, and the cause of action accrued on April 1, 1977, the date the policy was applied to its alleged victims.

### 2. *Constructive Knowledge*

■ Even if the EEOC had demonstrated the existence of a genuine factual question about whether the plaintiff employees actually knew of the "one benefit" only post-employment policy by the time the last employee was individually counselled, Westinghouse has submitted evidence to support a persuasive argument that the plaintiffs may still be presumed to have known of the alleged discriminatory policy more than two years prior to the filing of the complaint. Relying heavily on language in the Third Circuit's opinion in *Equal Employment Opportunity Comm'n v. Westinghouse Electric Corp.,* 725 F.2d 211 (3d Cir.1983), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984), Westinghouse urges that the plaintiffs be deemed to have had knowledge of the alleged discrimination as of April 1, 1977, the date the plant was closed. And even if the plaintiffs may not be deemed to have had this knowledge at the plant closing date, Westinghouse urges they must be deemed to have known of the policy as of the date they began receiving their severance benefits (the last such date being August 1, 1977).

These considerations were recognized by the Ninth Circuit in *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 593 (9th Cir. 1981), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983): "Other criteria, such as cessation of services, are relevant in aiding a court to set the operative [accrual] date only when they indicate that the employee knew or should have known of the commission of the unlawful employment practice...."

Westinghouse's arguments are particularly persuasive in situations such as exist in the case at bar, where the suggested dates are easily identified and are inexorably related to the essence of plaintiffs' claim. That this case presents an appropriate context for fixing the accrual date as either the plant closing date or the date

upon which the plaintiffs began receiving their early retirement benefits is clear. The plaintiffs in this action complain about the amount of benefits they began to receive as a result of the Belleville plant closing on April 1, 1977. Whether plaintiffs thought about it prior to the closing, they must have recognized once the plant closed that they would henceforth have some dependence on Westinghouse's post-employment benefit program. And, certainly by the time they received their first benefit payments, the plaintiffs knew the extent of those benefits. It is not unreasonable to presume, then, that laid off employees will be at least sufficiently responsible to assess and be knowledgeable of their own post-retirement benefits and to take appropriate steps if warranted.

Furthermore, the value of recognizing a specific date closely related to the essence of a class discrimination complaint should not be underestimated. Recognizing a date which promotes certainty and eliminates the need for technical litigation, at least when the date is consistent with the principles of *Ricks*, is clearly a judicial goal worth pursuing.

I emphasize the record does not establish or suggest this case involves a situation where the promulgator of an allegedly discriminatory policy is guilty of bad faith, deception or otherwise concealing an unlawful policy. Under such circumstances there would be compelling grounds for tolling the statute of limitations. In this action, to the contrary, the record indicates Westinghouse took numerous steps to advise its employees of the consequences of the plant closing. In such a situation, absent some justification, the employees must have some responsibility for assessing their post-employment fate. Since the last plaintiff began receiving his severance payments on August 1, 1977, more than two years prior to the commencement of this action, under a "constructive" knowledge approach to the accrual problem the action is untimely.

*Conclusion*

Westinghouse has established the plaintiffs knew of the allegedly discriminatory policy more than two years prior to the filing of this action. The EEOC has failed to demonstrate there is a reasonable issue of fact that the plaintiffs were not aware of the allegedly discriminatory policy more than two years prior to the filing of the action. Accordingly, the action is time-barred and must be dismissed.